IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HUBBELL INDUSTRIAL CONTROLS, INC., & HUBBELL INCORPORATED, | ) ) ) | |
| Plaintiffs, | ) ) ) | Hon. Amy St. Eve |
| vs. | ) ) | Case No. 12-8609 |
| ELECTRO POWER SYSTEMS OF UTAH, INC. and ROY VINCENT, | ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL
ATTORNEY BILLING RECORDS**

I. **INTRODUCTION**

This case arises from EPSU's unlawful passing-off of Hubbell's Type 5210 contactors, including its blowout coils and operating coils, by substituting parts made by EPSU but leading customers to believe that they were receiving authentic Hubbell contactors. Two such counterfeit contactors failed catastrophically in an Indiana steel mill, causing tens of millions of dollars in property damage and lost profits, and forcing Hubbell to spend more than $3.6 million dollars defending itself in a subsequent products liability lawsuit it should never have been in but for EPSU's unlawful counterfeiting. Hubbell brought this lawsuit to recover its attorneys' fees in the underlying case and other damages arising from the trade dress infringement, trademark infringement and unfair competition committed by EPSU and its president Roy Vincent, over the course of at least ten years. .

Hubbell is entitled to recover its attorneys' fees in the underlying case because they are actual damages under the Lanham Act. 15 U.S.C. § 1117(a). EPSU appears not to understand this theory and argues mistakenly that it is entitled to test the reasonableness of the attorney time

expended as if this were a statutory fee-shifting case, which it is not. Because Hubbell seeks its attorneys' fees as actual damages, and not through fee-shifting, the only relevant evidence is that Hubbell incurred and paid the fees for the underlying litigation.[1] Hubbell has already provided that information to EPSU in discovery. No more is required of Hubbell in this case. Accordingly, EPSU's Motion (Doc. 31) should be denied.

## II. ARGUMENT

EPSU confuses this case for a statutory fee-shifting case, which it is not.[2] Unlike a fee-shifting case, which the Seventh Circuit has described as featuring "pie-in-the-sky [attorneys' fees] numbers that one litigant seeks to collect from a stranger but would never dream of paying itself," with reasonableness as the touchstone, Hubbell's *actual damages* in the instant case arise from bills it *actually paid* in the ordinary course of its business while it defended itself in the underlying case. *Medcom Holding Co. v. Baxter Travenol Labs.*, 200 F.3d 518, 520-521 (7th Cir.

---

[1] By way of analogy, this case is like an airplane crash where a major airline thought it was buying genuine GE engine parts for its GE engines, but instead bought counterfeit parts. After a plane crash, everyone blames those precise parts for the accident. The exposure to GE is substantial, and the difficulty of demonstrating the parts were counterfeit is high. But for the counterfeiter wrongfully passing off its parts as GE's, GE would not be in the lawsuit. In such a circumstance, a line-by-line analysis of GE's attorneys' bills is not necessary. The point is that GE was forced to expend those fees in a lawsuit it should never have been in, and accordingly is entitled to be made whole for those fees by the counterfeiter.

[2] All of EPSU's cases arise in the context of civil rights fee-shifting statutes or Rule 37 sanctions, neither of which is relevant to Hubbell's claims for trade dress infringement, trademark infringement, unfair competition and consumer fraud. *See Sparks Tune-Up Centers v. Panchevre*, No. 90 C 4369, 1992 WL 368057 (N.D. Ill. Dec. 3, 1992) (seeking statutory fee award based on fee-shifting provision in Lanham Act and not as actual damages); *Dominguez v. Quigley's Irish Pub*, 897 F. Supp. 2d 674 (N.D. Ill. 2012) (seeking statutory fee-shifting award in civil rights action under section 1988); *Judah M. v. Bd. of Educ. of City of Chicago*, 798 F. Supp. 2d 942 (N.D. Ill. 2011) (seeking statutory fee-shifting award in civil rights action); *Markon v. Bd. of Educ. of the City of Chicago*, 525 F. Supp. 2d 980 (N.D. Ill. 2007) (seeking statutory fee-shifting award under ADEA); *Ropak Corp. v. Plastican Inc.*, No. 04 C 5422, 2007 WL 328880 (N.D. Ill. Jan. 30, 2007) (seeking fee-shifting award under Rule 37); *Moore v. University of Notre Dame*, 22 F. Supp. 2d 896 (N.D. Ind. 1998) (seeking statutory fee-shifting award under ADEA); *Simovitis v. Chanticleer Condo. Assoc.*, No. 96 C 2385, 1996 WL 675778 (N.D. Ill. Nov. 19, 1996) (seeking statutory fee-shifting award under FHA). All of these cases are cited in EPSU's Motion (Doc. 31) at 4-5.

1999). This type of attorneys' fee judgment is not reviewed under the same standard as statutory fee-shifting. Instead, it is subject to a much lower standard of commercial reasonableness that turns on the amounts billed, not the line-item descriptions of the work performed. *Id.* at 521.

In *Medcom*, the Seventh Circuit vacated and remanded the District Court's attorneys' fee award because the District Court erroneously evaluated the award under a statutory fee-shifting analysis that did not apply. The plaintiff and defendant in *Medcom* had a contractual indemnity provision allowing the award of reasonable attorneys' fees. To determine the proper fees to be awarded under the contractual indemnity, the District Court did a "detailed, hour-by-hour review" of the attorney invoices "after the fashion of a fee-shifting statute," which the Seventh Circuit later deemed to be error. The Seventh Circuit held that the District Court "should have undertaken an overview of [plaintiff's] aggregate costs to ensure that they were reasonable in relation to the stakes of the case and Baxter's litigation strategy...." *Id.* The best evidence of commercial reasonableness is that the party paid its attorneys' fees at a time when its ultimate recovery was uncertain. *Id.* (stating that "[i]f the bills were paid, this strongly implies that they meet market standards"); *Balcor Real Estate Holdings v. Walentas Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996) (stating that "the best evidence of the market value of legal services is what people pay for it").

Here, Hubbell paid the fees billed in the underlying case. Hubbell paid the fees during the underlying case when it was uncertain it could ever recover its fees from EPSU. Indeed, only several years into the litigation did Hubbell discover that EPSU was the source of the counterfeit contactors that failed. In the interim, Hubbell was forced to defend itself in a case where the plaintiff sought $52 million for property damage and lost profits. Hubbell was dismissed from the case on summary judgment shortly before trial, after more than three and a half years of

defending itself and learning through discovery that EPSU was the counterfeiter culprit, and then mustering the evidence to earn an appellate-proof summary judgment from the Indiana state court judge. EPSU had no insurance coverage for the underlying lawsuit, and repeatedly declared its intention to declare bankruptcy if any judgment were entered against it. After trial, a $36 million judgment was entered against the only remaining viable defendant, WESCO, which was the distributor who failed to detect the EPSU counterfeit. Hubbell had huge exposure in the case. How Hubbell spent $3.6 million in fees (inclusive of expert witness fees) is beyond EPSU's evaluation, as long as Hubbell shows that it incurred and paid the fees.[3]

Hubbell has produced information to EPSU that sufficiently establishes the amounts billed and paid. The Seventh Circuit has already held that in cases seeking attorneys' fees through mechanisms other than fee-shifting statutes – and particularly here, where the attorneys' fees are Hubbell's actual and direct damages from EPSU's counterfeiting – EPSU has no basis to seek additional, line-item, "hour-by-hour" information about the tasks performed by individual attorneys in the underlying case. *Medcom*, 200 F.3d at 520.

The foregoing legal framework is the correct one to apply. Against this framework, EPSU's complaint that it cannot "properly defend" against Hubbell's claim for attorneys' fees rings hollow, *see* Motion (Doc. 31) at 7 – especially when EPSU does not and cannot assert as a matter of law an affirmative defense that Hubbell failed to mitigate its damages. *See* EPSU's Answer & Affirmative Defenses to Hubbell's Complaint (Doc. 13) (not asserting an affirmative defense of failure to mitigate damages). So too does EPSU's complaint ring hollow that it is "unable to discover whether the damages allegedly incurred are actually relevant to the claims now being brought by Hubbell." *See* Motion (Doc. 31) at 7. All of the redacted invoice pages

---

[3] To the extent EPSU seeks additional information regarding proof of payment, Hubbell can provide that.

show that the amounts were billed to the underlying litigation. Thus, because Hubbell paid its attorneys' fees in the underlying case and now seeks those fees as actual damages under the Lanham Act, Hubbell has provided EPSU with sufficient discovery on the attorneys' fees it paid in the underlying case.

### III. FURTHER STATEMENT REGARDING LOCAL RULE 37.2

Hubbell also notes that nothing in EPSU's Motion warrants holding the upcoming depositions of Hubbell personnel in abeyance, as EPSU requests on page 9. As early as September 5, 2013, the parties fulfilled their obligations to meet and confer about this discovery dispute pursuant to Local Rule 37.2 by talking by phone about this dispute, as EPSU describes in its Motion on page 4. Five days later, EPSU asked the Court for a substantial extension of the fact discovery deadline. The Court extended the fact discovery deadline to November 4, which was less than what EPSU sought. Notwithstanding this tight deadline, EPSU did not file a motion to compel until three (3) weeks later on September 26. EPSU claims in its Motion that it had to confer with Hubbell's counsel in person consistent with the Court's Standing Order. However, the Court's Standing Order does not require in person consultation. *See* Standing Order on Discovery Motions (providing that "compliance with Local Rule 37.2 requires a good faith effort to resolve discovery disputes and communication that takes place face to face <u>or by telephone</u>") (emphasis added). EPSU's counsel appears to be seeking to avoid the depositions and create further delay of this case by filing this Motion when it did.

-6-

## IV. CONCLUSION

For all of the foregoing reasons, EPSU's Motion (Doc. 31) should be denied.

Dated: October 7, 2013

Respectfully submitted,

**HUBBELL INDUSTRIAL CONTROLS, INC. and HUBBELL INCORPORATED**

By: /s/Alison C. Conlon

Mark P. Miller (ARDC No. 06191128)
mmiller@btlaw.com
Alison C. Conlon (ARDC No. 6272083)
aconlon@btlaw.com
Barnes & Thornburg LLP
One North Wacker Drive
Chicago, IL 60606
(312) 357-1313 (telephone)
(312) 759-5646 (facsimile)

-7-

## **CERTIFICATE OF SERVICE**

Alison C. Conlon, an attorney, hereby certifies that a copy of the foregoing **PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ATTORNEY BILLING RECORDS** was electronically filed on this 7th day of October, 2013 with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system which will send notification of such filing to all Counsel of Record.

/s/ Alison C. Conlon
Alison C. Conlon
Illinois State Bar No. 6272083
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone: (312) 214-5619
Fax: (312) 759-5646
aconlon@btlaw.com