**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HUBBELL INDUSTRIAL CONTROLS, INC. and HUBBELL INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 12-cv-8609 |
| ELECTRO POWER SYSTEMS OF UTAH, INC. and ROY EDWARD VINCENT, JR., | ) ) ) ) | |
| Defendants. | ) ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

Before the Court are Defendant Electro Power Systems of Utah, Inc.'s ("Electro Power")

two motions to compel further discovery responses from Plaintiffs Hubbell Industrial Controls,

Inc. and Hubbell Inc. (collectively, "Hubbell").  Electro Power moves to compel Hubbell to

(1) provide further responses to two interrogatories seeking identification of Hubbell's alleged

trade dress configurations (*see* R. 29) and (2) produce unredacted attorney billing records to

support Hubbell's damages theory (*see* R. 31).  For the following reasons, the Court grants in

part and denies in part Electro Power's motion to compel further responses to its trade dress

interrogatories (R. 29) and denies Electro Power's motion to compel Hubbell to produce

unredacted attorney billing records (R. 31) in its entirety.

## BACKGROUND

On October 26, 2013, Hubbell filed this suit against Electro Power, alleging that Electro

Power unlawfully attempted to reproduce component parts for Hubbell's braking contactors and

misled customers into believing that Electro Power's contactors were genuine Hubbell products.

(R. 1, Compl. ¶ 1.)  In the operative complaint, Hubbell asserts claims for trademark and trade dress infringement, unfair competition and violation of the Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud Act.  (R. 26, Am. Compl. ¶¶ 26-90.)  Hubbell seeks compensatory, treble and punitive damages and to enjoin Electro Power from the continued reproduction, sale and distribution of the allegedly infringing contactors.  (*Id.* ¶¶ 1, 93.)  Hubbell seeks approximately $3 million for legal fees and expenses that Hubbell spent defending against a products liability lawsuit that arose out of the failure of two Electro Power contactors mistaken for Hubbell contactors.[1]  (R. 29 at Ex. 2, pp. 4, 16.)

Electro Power issued interrogatories and requests for production of documents to Hubbell on March 21, 2013.  (*Id.* at 2.)  On May 24, 2013, Hubbell served its initial interrogatory responses and written responses to Electro Power's requests for production.  (*Id.* at Ex. 1; R. 31 at 2.)  On July 19, 2013, Hubbell issued supplemental interrogatory responses.  (R. 29 at Ex. 2.) Hubbell produced documents responsive to Electro Power's requests on June 4, July 19 and August 12, 2013.  (R. 31 at 3.)  At issue here are Hubbell's responses to two interrogatories requesting information on Hubbell's alleged trade dress configurations (R. 29) and Hubbell's refusal to produce unredacted attorney billing records related to the *Acrelormittal* products liability litigation to support its claim for damages (R. 31).

I.     **Trade Dress Interrogatories**

In Interrogatory No. 11, Electro Power requested that Hubbell "describe with particularity the exact elements of the alleged protectable trade dress of Hubbell's alleged trade dress configurations."  (R. 29 at Ex. 1, p. 7.)  In Hubbell's initial response, it objected to the interrogatory to the extent it called for a legal conclusion and stated, subject to its objection:

---

[1] *Acrelormittal Indiana Harbor, LLC v. Hubbell Industrial Controls, Inc.,* No 45D10-0802-PL-0025 (Lake County, Ind. Circuit Court).

> [T]he facts evidencing the protectable features of Hubbell's trade dress include, but are not limited to, the specific facts related to the following elements of Hubbell's 5210 contacts, operating coils, and blowout boils (collectively, the "Products"): the color of the Products, their individual components, and packaging: the shape, size and organization of components in the Hubbell 5210 contractors; and the text used on the Products and packaging, including the font, size, color, and specific part numbers of the Products.

(*Id.* at Ex. 1, pp. 7-8.)

Hubbell supplemented its response on July 19, 2013, further stating:

> . . . [T]he elements of Hubbell's protectable trade dress configurations for the Hubbell 5210 contactors at issue in this case include, but are not limited to, the following: the armature assembly; the stator assembly; the arc shield assembly; the curve and "seesaw" shape of the armature; the shape of the pivot pins with spring clips; the aluminum side plates on the armature; the overall footprint of the contactor; the dark blue operating coils; blue spring; the nameplate that includes the type and size of contactor, volts, amps, contactor part number, serial number, CSA logo, and Hubbell name; and the overall orientation of the individual contactor parts on the contactor base.

> . . . [T]he elements of Hubbell's protectable trade dress configurations for Hubbell's blowout coils at issue in this case include, but are not limited to, the following: the trapezoidal shape of the bar; the rounded corners of the bar; the use of ETP copper and appearance it gives; and the footprint of the Hubbell blowout coil that makes it compatible with Hubbell contactors.

> . . . [T]he elements of Hubbell's protectable trade dress configurations for the Hubbell's operating coils at issue in this case include, but are not limited to, the following: the dark blue color of the operating coil; the part number of the operating coil; the presence of a date code on the operating coil; the anti-rotation feature; the location of the anti-rotation feature; and the footprint of the Hubbell operating coil that makes it compatible with Hubbell contactors.

(*Id.* at Ex. 2, pp. 9-10.) Hubbell stated in its response brief that it intends to supplement its trade dress definition again "to include [Hubbell's] trademark and the overall appearance of its contactor, blowout coil and operating coil."[2] (R. 40 at 4 n. 1.)

In Interrogatory No. 21, Electro Power requested information on Hubbell's first use of its alleged trade dress configurations: "Identify the date of first use in the United States by Plaintiffs

---

[2] Electro Power had not yet received Hubbell's second supplemental interrogatory responses when it filed its reply brief on October 11, 2013. (R. 42 at 3 n.1.)

of Hubbell's alleged trade dress configurations. Identify expressly the circumstances of such first use and any documents that evidence such date of first use." (R. 29 at Ex. 1, p. 10.) Hubbell's initial response stated only that its "investigation continue[d]" and it would "seasonably supplement" its answer. (*Id.*) On July 19, 2013, Hubbell supplemented its response to state that "[Hubbell's] trade dress configurations have been in use in their present, protectable state since at least 1995." (R. 29 at Ex. 2, p. 14.)

In its first motion to compel (R. 29), Electro Power seeks to compel Hubbell to provide further responses to Interrogatory Nos. 11 and 21. Electro Power argues that Hubbell's response to Interrogatory No. 11 "lacks the articulation and particularity requested and is wholly insufficient to enable [Electro Power] to determine what Hubbell is claiming trade dress protection in," (*id.* at 3-4) and that Hubbell's response to Interrogatory No. 21 is "insufficient and non-responsive" (R. 42 at 5).

## II.  Production of Hubbell's Attorney Billing Records

In Request for Production No. 36, Electro Power requested that Hubbell produce "[a]ll documents and things upon which [Hubbell] will rely to establish and calculate its damages, including but not limited to any lost revenues or profits, attorneys' fees and/or punitive damages, which [Hubbell] claim[s] were caused by [Electro Power's] conduct as set forth in the Complaint." (R. 31 at 2.) One component of the compensatory damages Hubbell seeks is approximately $3 million in legal fees and expenses it spent defending against the *Acrelormittal* products liability suit, which Hubbell claims it would have avoided if not for Electro Power unlawfully misleading customers into believing that the contactors Electro Power built were authentic Hubbell contactors. (*See* R. 29 at Ex. 2, pp. 4, 16; *see also* R. 39 at 1.) On August 12, 2013, Hubbell produced its attorney billing records from the *Acrelormittal* litigation, but the

4

records it produced listed only the amounts charged to Hubbell and the dates of those charges.[3]

(R. 31 at 3-4 & Ex. 1.)

Electro Power's second motion to compel (R. 31) seeks an order compelling Hubbell to produce more detailed attorney billing records to substantiate Hubbell's damages claim. (*Id.* at 9.) Specifically, Electro Power seeks billing records that indicate the "identity of the attorney(s) providing the legal services, an itemization of the time expended for the individual service, and the hourly rate(s) charged." (*Id.* at 9.) Electro Power also requests that the Court hold all depositions in abeyance until Hubbell produces these additional documents. (*Id.*)

## LEGAL STANDARD

The Federal Rules of Civil Procedure allow liberal discovery to assist in preparation for trial and settlement of disputes. *See Bond v. Uteras,* 585 F.3d 1061, 1075 (7th Cir. 2009). Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

In the context of motions to compel, the Seventh Circuit instructs that a "district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Air Lines, Inc.,* 95 F.3d 492, 496 (7th Cir. 1996). "The burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.,* 235 F.R.D. 447, 450 (N.D. Ill. 2006). This burden "is not satisfied by a 'reflexive invocation of the same baseless, often abused litany

---

[3] Electro Power asserts that Hubbell "heavily redacted" the attorney billing records it produced. (R. 31 at 3-4.) The sample documents Electro Power submitted to the Court under seal, however, do not contain redactions. (*Id.* at Ex. 1.)

that the requested discovery is vague, ambiguous, overly broad, unduly burdensome, or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.'" *Osada v. Experian Info. Solutions, Inc.,* 290 F.R.D. 485 (N.D. Ill. 2012) (citation omitted). As with all discovery matters, the Court has broad discretion in deciding motions to compel. *See James v. Hyatt Regency Chi.,* 707 F.3d 775, 784 (7th Cir. 2013).

**ANALYSIS**

**I.     Trade Dress Interrogatories**

**A.     Interrogatory No. 11**

Electro Power argues that Hubbell's response to Interrogatory No. 11 does not identify the elements of Hubbell's alleged protectable trade dress with sufficient "articulation and particularity" to allow Electro Power to defend itself. (R. 29 at 3-4.) Hubbell, on the other hand, contends that its response satisfies its discovery obligations. (R. 40 at 2, 4.) Moreover, Hubbell argues that Electro Power can better obtain the specificity it seeks through the upcoming depositions of Hubbell's personnel and Rule 30(b)(6) representatives rather than through supplemental interrogatory responses. (*Id.* at 2, 4.)

"'Trade dress' refers to a product's overall image, including its 'size, shape, color, graphics, packaging, and label' . . . ." *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 20 (7th Cir. 1992) (quoting *Vaughan Mfg. Co. v. Brikam Int'l, Inc.,* 814 F.2d 346, 348 n.2 (7th Cir. 1987)). Hubbell seeks trade dress protection for three products: its 5210 contactors, its blowout coils, and its operating coils. (*See* R. 29 at Ex. 2, pp. 9-10; R. 40 at 3.) In response to Interrogatory No. 11, Hubbell lists eleven specific elements of its alleged trade dress for its contactors, four elements for its blowout coils, and six for its operating coils. (*See* R. 29 at Ex. 2, pp. 9-10.) For all but three elements, Hubbell also details the particular aspect that it claims is

6

part of its protectable trade dress.  (*Id.*)  Hubbell, for example, identifies the "*curve and 'seesaw'*
*shape* of the armature," the "*dark blue* operating coils," and the "*trapezoidal shape* of the bar" in
its blowout coils as parts of its alleged trade dress.  (*Id.* (emphasis added).)

      The Court finds that Hubbell's description of these elements contains sufficient
particularity to fulfill Hubbell's discovery obligations.  Hubbell's description of the remaining
three elements—the "armature assembly," the "stator assembly" and the "arc shield assembly"—
however, requires more particularity.  The Court, therefore, orders Hubbell to supplement its
response to Interrogatory No. 11 to include the particular aspect(s) of those elements that
Hubbell claims is part of its trade dress.

      Furthermore, the Court strikes the phrase "include, but not limited to" from Hubbell's
response.  Hubbell must identify *all* elements of its alleged trade dress, not just some, in response
to Interrogatory No. 11.  *See* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must . . . be answered
separately and fully . . . .").  Because Hubbell represents that its response already identified all
but two elements of its alleged trade dress and it will supplement its response to include the two
missing elements (R. 40 at 4 n.1), striking this phrase should not require Hubbell to substantively
alter its response.

      The Court rejects Electro Power's argument that Hubbell's description of its alleged trade
dress is "amorphous," "vague" or "unclear."  (*See* R. 29 at 8.)  Aside from the specific shortfalls
addressed above, Hubbell has provided sufficient detail to delineate its trade dress definition; it
identified the specific elements, and even particular aspects of those elements, for which it
claims trade dress protection.  (*See id.* at Ex. 2, pp. 9-10.)  Hubbell's trade dress definition is not
so imprecise or vague that it will prevent the court from determining the validity of its trade
dress infringement claim or prejudice Electro Power's ability to conduct additional discovery and

prepare its defense. *Cf. Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.,* 80 F. Supp. 2d 815, 889-90 (N.D. Ill. 1999) ("Specificity . . . is necessary because 'imprecision and vagueness [in the alleged trade dress] is unfair to the party accused of infringement who is forced to defend against an amorphous claim of exclusivity which is of uncertain and indeterminate dimensions.'" (alteration in original) (quoting *McCarthy on Trademarks and Unfair Competition,* at §§ 8-9 (4th ed. 1998)). If Electro Power is unclear about specific element of Hubbell's alleged trade dress, it can seek clarification during the upcoming depositions of Hubbell's personnel and Rule 30(b)(6) representatives.

Furthermore, Hubbell's interrogatory response, on its face, is neither vague nor unclear. Rather, Electro Power imports ambiguity into Hubbell's response by addressing the merits of Electro Power's alleged trade dress claim instead of the sufficiency of its interrogatory response under applicable discovery rules. (*See, e.g.,* R. 29 at 8; R. 42 at 3-4.) Electro Power argues, for example, that because Hubbell purportedly admitted that some components of its contactors are "functional" and, therefore, not protectable under the Lanham Act, "the nature of [Hubbell's] alleged protectable trade dress remains unclear." (R. 42 at 3-4.) Electro Power also argues that one of the elements Hubbell identified—the "overall footprint of the contactor"—is "merely a rectangular shaped box, leaving [Electro Power] unsure as to what Hubbell is claiming protection for." (R. 29 at 8.) Arguments like these about the functionality or distinctiveness of Hubbell's trade dress go to the merits of Hubbell's infringement claim, not to the sufficiency of its response to Interrogatory No. 11.

**B.      Interrogatory No. 21**

Interrogatory No. 21 requested that Hubbell identify the date of first use of Hubbell's alleged trade dress configurations in the United States, the circumstances of this first use, and

any documents that evidence the date of this first use. (R. 39 at Ex. 1, p. 10.) Hubbell responded

that its "trade dress configurations have been in use in their present, protectable state since at

least 1995." (*Id.* at Ex. 2, p. 14.) Electro Power argues that Hubbell's response is "insufficient

and non-responsive." (R. 42 at 5.)

Hubbell's response to Interrogatory No. 21 is deficient in two respects. First, though

Hubbell claims trade dress protection for three products (*see* R. 40 at 2 ("Hubbell specifically

identified all of the elements of trade dress for which it is seeking protection for *three products—*

its contactor, its blowout coil and its operating coil." (emphasis added)), it provided only one

date of first use. (*See* R. 29 at Ex. 2, p. 14.) If all three products share the same date of first use,

Hubbell must explicitly state so. If not, Hubbell must specify the date of first use for each

product. Second, Hubbell responded only to the first part of Interrogatory No. 21. It neglected

to respond (or object) to the requests that Hubbell identify the circumstances of its first use and

any documents evidencing that first use. (*Id.*) Hubbell must supplement its response to

Interrogatory No. 21 to provide this additional information for each product for which it claims

trade dress protection. If Hubbell knows of no documents evidencing its first use of those

products, it must explicitly state so.

## II.     Production of Hubbell's Attorney Billing Records

Electro Power's second motion to compel concerns Hubbell's refusal to produce

unredacted attorney billing records related to the *Acrelormittal* litigation that include the

"identity of the attorney(s) providing the legal services, an itemization of the time expended for

the individual service, and the hourly rate(s) charged." (R. 41 at 9.) The parties disagree about

the legal standard that should apply to calculating Hubbell's attorneys' fee damages. Electro

Power argues that the statutory fee-shifting framework courts generally use to evaluate awards of

attorneys' fees applies.  (R. 31 at 4-7.)  Specifically, under Electro Power's proposed system, the Court would evaluate Hubbell's attorney billing records, including the names of the attorneys, the hours billed, and a description of the tasks performed to determine whether the fees Hubbell incurred were "reasonable."  (*See id.* (collecting cases).)  Hubbell, on the other hand, argues that because it seeks attorneys' fees as "actual damages"—not under a statutory fee-shifting framework—the Court would consider the amount of attorneys' fees Hubbell in fact paid, but it would not dissect the reasonableness of those fees.  (R. 39 at 2-4.)

Illinois law suggests that Hubbell is correct.  Under Illinois law, "[w]here the wrongful acts of a defendant involve the plaintiff in litigation with third parties or place him in such relation with others as to make it necessary to incur expense to protect his interest, the plaintiff can then recover damages against such wrongdoer, measured by the reasonable expenses of such litigation, including attorney fees."  *Ritter v. Ritter,* 381 Ill. 549, 554, 46 N.E.2d 41 (Ill. 1943); *Nalivaika v. Murphy,* 120 Ill. App. 3d 773, 776, 76 Ill. Dec. 341, 458 N.E.2d 995 (Ill. App. Ct. 1983) ("Where the attorney fees sought by the plaintiff are those incurred in actions with third parties brought by a defendant's misconduct, the litigation expenses are merely a form of damages and are accordingly recoverable from the defendant."); *Sorenson v. Fio Rito,* 90 Ill. App. 3d 368, 371-72, 45 Ill. Dec. 714, 413 N.E.2d 47 (Ill. App. Ct. 1980) (The "American Rule" that each party should pay its own legal fees does not "preclude a plaintiff from recovering losses directly caused by the defendant's conduct simply because those losses happen to take the form of attorneys' fees.").  "In determining whether the plaintiff proved the reasonableness of her expenditures, ordinary principles of damage should apply."  *Sorenson,* 90 lll. App. 3d at 376-77.  Applying this principle, the Illinois appellate court in *Sorenson* rejected the defendant's argument that the plaintiff must provide records detailing the services its counsel rendered and

the amounts charged for those services. *See id.* at 376. The *Sorenson* court found that the attorney's testimony regarding the costs of his services and the plaintiff's testimony that she paid those fees satisfied the plaintiff's burden to prove the damages she allegedly incurred. *Id.* at 376-77. Thus, under Illinois law, Hubbell would not necessarily need to rely on detailed attorney billing records to prove its damages.

Hubbell, however, seeks attorneys' fee damages under the federal Lanham Act, not its state-law claims. (*See* R. 39 at 5.) Neither party addressed in its briefing whether federal law, like Illinois law, applies ordinary damages principles to claims for attorneys' fees resulting from third-party litigation.

The Court, however, does not need to resolve this issue because Electro Power's motion to compel fails for a more fundamental reason: Request for Production No. 36 did not request all documents related to Hubbell's alleged damages, only those documents "upon which [Hubbell] will rely to establish and calculate its damages." (R. 31 at 2.) If Hubbell chooses to rely solely on the attorney billing records it has produced and testimony, that is Hubbell's prerogative, and it need not produce additional documents in response to Request for Production No. 36.

Electro Power has known for months that Hubbell seeks its attorneys' fees from the *Acrelormittal* litigation as damages, but Electro Power apparently never requested documents related to those attorneys' fees other than the documents on which Hubbell will rely. Electro Power's motion thus seeks to compel the production of documents it never requested. The Court, therefore, denies Electro Power's motion.

In the interests of justice, however, the Court will give Electro Power a chance to request additional documents on the limited issue of Hubbell's attorneys' fee damages, and will allow fact discovery on this limited issue to extend beyond the November 4, 2013 fact discovery

11

cutoff. Electro Power shall issue its limited supplemental requests for production, if it so chooses, by October 22, 2013. Hubbell shall respond to Electro Power's supplemental requests by November 5, 2013.

Finally, the Court denies Electro Power's request to hold all depositions in abeyance pending Hubbell's production of unredacted billing records. (R. 31 at 8-9.) The parties shall proceed with depositions as scheduled. If Electro Power requests, and Hubbell ultimately produces, additional attorney billing records, the parties should meet and confer to determine whether additional, limited depositions are necessary.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Electro Power's motion to compel Hubbell to provide further responses to Electro Power's trade dress interrogatories (R. 29). Hubbell shall supplement its responses to Interrogatory Nos. 11 and 21 in accordance with the Court's order by October 22, 2013. The Court denies Electro Power's motion to compel Hubbell to produce unredacted attorney billing records without prejudice. The Court reminds the parties of their obligations under Local Rule 37.2.

**DATED: October 17, 2013**

**ENTERED**

AMY J. ST. EVE
U.S. District Court Judge

12